UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2008 APR 23  A 10: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CHARLEAN MALONE, )<br>KENNETH MALONE, )<br>        Plaintiffs )<br>)<br>v. )<br>)<br>)<br>RGS FINANCIAL, INC., )<br>        Defendant ) | Civil Action No. 08CV30085-MAP |

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") was enacted by Congress in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. §1692(a). Congress found that these practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. *Id.* It further found that "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers." 15 U.S.C. §1692(b).

In addition, the Massachusetts Attorney General has promulgated regulations designed to "establish standards, by defining unfair or deceptive acts or practices [prohibited under G.L. c. 93A], for the collection of debts from persons within the Commonwealth of Massachusetts." 209 CMR 18.01.

In this action, plaintiffs contend that defendant collection agency violated the FDCPA and c. 93A by, *inter alia,* making a number of unfair, threatening, and misleading statements to them in connection with attempting to collect an alleged debt.

### Parties

1. Plaintiffs Charlean Malone and Kenneth Malone are individuals, husband and wife, who is an individual who reside in East Longmeadow, Hampden County, Massachusetts.

2. Defendant RGS Financial, Inc. is a business corporation which on information and belief is organized under the laws of the State of Texas and having a principal place of business in Carrolton, Texas. At all times relevant to this complaint, defendant was engaged in trade or commerce in the Commonwealth of Massachusetts.

### Jurisdiction and Venue

3. Certain of plaintiff's claims arise under 15 U.S.C. §1692 *et seq.* and this Court therefore has subject matter jurisdiction over said claims pursuant to 15 U.S.C. §1692k(d) and 28 U.S.C. §1337. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and adjudicate plaintiff's claims arising under state law.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### Statement of Facts

7. On October 4, 2007, Charlean Malone received a call from an employee of defendant who identified himself as Mr. Krause. The call was in reference to an old automobile loan on which Charlean had allegedly defaulted. Krause offered Charlean a settlement of $1,900, which Charlean accepted. Krause indicated Charlean should call back on October 12 to formalize the settlement. However, Krause called Charlean back on October 8. At that time, an individual identifying himself as Chris Brown came on the

line, stating that he was Krause's manager and that Krause was a new employee and had mistakenly agreed to the $1,900 settlement. Brown said that instead Charlean had to pay the full amount allegedly due - $5,913.80. Charlean explained she felt this was unfair since there had been an agreement on a different amount. Brown proceeded to read Charlean information purporting to be from her credit report indicating she had available credit to be used toward the debt. Brown said that if she did not pay at least $1,000 by October 29 he would not even consider a settlement for less than full value. Charlean became extremely upset and the call ended.

8. Brown called Charlean back about ten minutes later. He now stated that Charlean needed to pay $3,000. Charlean replied that she was still willing to honor the agreement to settle the account for $1,900, but Brown stated this was not available. He then stated he would settle for half of the debt. Charlean explained to him that she had nothing in writing from RGS about the debt and was not sure it was hers or that it was even owed, and she broke down crying. Brown said he would call back on October 12 and ended the call.

9. On October 11, 2007, Krause called Charlean and stated he needed to lock in the settlement amount of $2,956.54. He said that her credit report indicated she had $2,900 available to contribute to this debt. Charlean asked him not to look at her credit report, and that if she had the money she would likely take care of the alleged debt since it was affecting her military career. Krause insisted that she give him a credit card, debit card, or bank account information to make the payment. Charlean refused to do that, explaining that she had never received anything in writing from him or his company and was therefore not going to provide any personal financial information. The call ended.

Charlean then called back and spoke with a Ms. Baker, explaining the problems she had experienced with Krause and Brown. Baker seemed understanding and said she would send a letter to Charlean containing relevant information and that she should call once it had been received.

10. On Saturday, October 13, 2007, at approximately 8:15 a.m., Krause called Charlean's residence while she was not at home, waking up her husband, Kenneth Malone. Kenneth explained that Charlean was not home and terminated the call. Krause called back a few hours later. Kenneth explained that Charlean was still not home and that he was trying to catch up on sleep. Krause responded, in essence, "if you owe a debt, you don't deserve any rest." Kenneth ended the call. About 30 minutes later, Brown called back. He asked Kenneth how he could own a home if he could not pay his bills, and why his wife was able to pay other obligations which he said he had seen on her credit report. Kenneth told Brown that Charlean had been reduced to tears due to their conversations, and Brown responded "I don't care." Brown then asked Kenneth if he was "some kind of phone gangster." Kenneth ended the call.

11. Krause called Charlean again on October 15, asking if she was going to pay the debt. She indicated that due to the interactions with RGS she would not be doing so, and that RGS should stop calling her. Krause said he would continue to call, and Charlean hung up. Krause called back a few minutes later, leaving a message on the answering machine.

12. Krause called again on October 17. Ken answered the phone, reiterating that RGS was not to call.

13. Krause called again on October 19. Charlean again asked him not to call. After she hung up, Krause called back and left a message to the effect that they were "good friends" and that the calls were not going to stop.

14. On October 23, a female RGS employee called Mrs. Malone, explaining she was handed this file and had heard about the previous disturbing calls. She asked for Ms. Malone's address, explaining she wanted to send out a letter. Charlean provided her with her mailing address.

15. On November 3, an RGS employee named "Sheila" called Charlean. Sheila stated that the file had been given to her and asked if she could send Charlean a letter. Charlean replied that she did not care who sent the letter so long as she finally got something in writing. Sheila then put Charlean on hold and transferred the call to another employee who identified himself as "Darnel." After introducing himself, Darnel asked "are you going to pay this bill?" Charlean replied that she was still waiting for something in writing. Darnel continued to ask if Charlean was going to pay the bill, and she ended the call.

16. On November 8, an RGS employee identifying herself as "Greta McWilliams" left a message on Charlean's home phone.

17. On November 13, Charlean sent a letter to RGS requesting that she not be contacted.

18. On November 14, an RGS employee identifying herself as "Tanya" called Charlean's cell phone and left a message.

19. On or about December 2, an RGS employee called Mrs. Malone's mother, stating that it was about an "auto loan" and that RGS was trying to find Charlean.

20. Charlean has never received anything in writing from RGS regarding the alleged debt.

### Claims for Relief – Charlean Malone

### COUNT I

21. The allegations of paragraphs 1 – 20 are incorporated herein as if fully set forth.

22. Neither in the initial communication to Charlean nor within 5 days thereafter did defendant provide the notice required by 15 U.S.C. §1692g(a).

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding statutory damages, costs and reasonable attorney's fees.

### COUNT II

23. The allegations of paragraphs 1 – 20 are incorporated herein as if fully set forth.

24. In the initial communication with Charlean, defendant did not disclose it was attempting to collect a debt and that any information obtained would be used for that purpose.

25. Defendant's conduct as aforesaid violated 15 U.S.C. §1692e(11)..

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding her statutory damages, costs, and reasonable attorney's fees.

### COUNT III

26. The allegations of paragraphs 1 - 20 are incorporated herein as if fully set forth.

27. In communications with Charlean after the initial communication, defendant did not identify itself as a debt collector.

28. Defendant's conduct as aforesaid violated 15 U.S.C. §1692e(11)..

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding her statutory damages, costs, and reasonable attorney's fees.

### COUNT IV

29. The allegations of paragraphs 1 – 20 are incorporated herein as if fully set forth.

30. Defendant engaged in conduct the natural consequence of which was to harass, abuse, and/or oppress Charlean, in violation of 15 U.S.C. §1692d

31. As a result of said unlawful conduct, plaintiff suffered distress, confusion, and anxiety.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding her actual damages; statutory damages; interest, costs and reasonable attorney's fees.

### COUNT V

32. The allegations of paragraphs 1 – 20 are incorporated herein as if fully set forth.

33. Defendant engaged in false, misleading, and/or deceptive conduct by misrepresenting to Charlean that a settlement was reached for $1,900 and that written information about the alleged debt would be sent to Charlean, in violation of 15 U.S.C. §1692e.

34. As a result of said unlawful conduct, plaintiff suffered distress, confusion, and anxiety.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding her actual damages; statutory damages; interest, costs, and reasonable attorney's fees

### COUNT VI

35. The allegations of paragraphs 1 – 20 are incorporated herein as if fully set forth.

36. Defendant communicated with a third party about the alleged debt without the consent of Charlean, in violation of 15 U.S.C. §1692c(b).

37. As a result of said conduct, plaintiff suffered distress, confusion, and anxiety.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding her actual damages, statutory damages, interest, costs, and attorney's fees.

### COUNT VII

38. The allegations of paragraphs 1 – 37 are incorporated herein as if fully set forth.

39. The above-described conduct by defendant was unfair and/or deceptive in violation of G.L. c. 93A, section 2.

40. Defendant's misconduct was knowing or willful in nature.

41. On February 14, 208, Charlean Malone – through counsel – sent a demand for relief to defendant pursuant to G.L. c. 93A, section 9, via certified mail, return receipt requested, which demand reasonably described the unlawful acts and omissions complained of and injuries suffered.

42. Defendant received said demand on February 19, 2008.

43. Defendant did not make a reasonable written tender of settlement within 30 days of receipt of plaintiff's demand letter.

44. Defendant's failure to make a reasonable written tender of settlement within 30 days of receipt of plaintiff's demand letter was in bad faith with knowledge or reason to know that its conduct violated G.L. c. 93A, section 2.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding her actual damages or statutory damages, whichever is greater; doubling or trebling actual damages awarded; plus interest, costs, and reasonable attorney's fees

.

## Claims for Relief – Kenneth Malone

### COUNT VIII

45. The allegations of paragraphs 1 – 44 are incorporated herein as if fully set forth.

46. Defendant engaged in conduct the natural consequence of which was to harass, abuse, and/or oppress Kenneth, in violation of 15 U.S.C. §1692d.

47. As a result of said unlawful conduct, plaintiff suffered distress, confusion, and anxiety.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding him actual damages; statutory damages; interest, costs and reasonable attorney's fees.

### COUNT IX

48. The allegations of paragraphs 1 – 47 are incorporated herein as if fully set forth.

49. The above-described conduct by defendant was unfair and/or deceptive in violation of G.L. c. 93A, section 2.

50. Defendant's misconduct was knowing or willful in nature.

51. On February 14, 208, Kenneth Malone – through counsel – sent a demand for relief to defendant pursuant to G.L. c. 93A, section 9, via certified mail, return receipt requested, which demand reasonably described the unlawful acts and omissions complained of and injuries suffered.

52. Defendant received said demand on February 19, 2008.

53. Defendant did not make a reasonable written tender of settlement within 30 days of receipt of plaintiff's demand letter.

54. Defendant's failure to make a reasonable written tender of settlement within 30 days of receipt of plaintiff's demand letter was in bad faith with knowledge or reason to know that its conduct violated G.L. c. 93A, section 2.

WHEREFORE, plaintiff prays that this Honorable Court enter judgment awarding him actual damages or statutory damages, whichever is greater; doubling or trebling actual damages awarded; plus interest, costs, and reasonable attorney's fees

### DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all claims.

CHARLEAN MALONE
KENNETH MALONE
Plaintiffs
By their attorney:

Kenneth D. Quat
BBO #408640
QUAT LAW OFFICES
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848
ken@quatlaw.com